NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| REBECCA ANN KAPLAN, | : | **Hon. Dennis M. Cavanaugh** |
| | : | |
| Appellant, | : | **OPINION** |
| | : | |
| v. | : | Civil Action No. 2:11-cv-3572 (DMC) |
| | : | |
| KENNETH GRUBER and MURRAY GRUBER, | : | |
| | : | |
| Appellees. | : | |

DENNIS M. CAVANAUGH, U.S.D.J.:

This matter comes before the Court upon Appellant Rebecca Ann Kaplan's appeal of the Bankruptcy Court's Order Denying Motion to Extend Time to File an Appeal, entered on May 11, 2011. Pursuant to FED. R. CIV. P. 78, no oral argument was heard. After careful consideration, and based upon the following, the Order entered by the Bankruptcy Court is **Affirmed**.

I.      BACKGROUND[1]

This case concerns a pro se litigant's request for an extension of time to appeal an entry of judgment, where the litigant claims lack of notice of that entry of judgment. Appellant Rebecca Ann Kaplan ("Appellant") is representing herself in this action. Alan Kaplan, Appellant's husband, incorporated the Xactis Corporation in March of 2005. (Appellant's Br. 5, ECF No. 6; Appellees' Br. 3, ECF No. 7). On October 9, 2007, Appellees Kenneth and Murray Gruber ("Appellees") filed

---

[1] The facts set forth in this Opinion are taken from the Parties' submissions.

suit against Appellant in the Superior Court of New Jersey Law Division: Essex County (the "State Court Proceeding"), based on fraudulent and otherwise deceptive conduct of Appellant used in inducing investments by Appellees in the Xactis Corporation.  (Appellant's Br. 5; Appellees' Br. 6 n.1).  On October 1, 2008, Appellant filed a voluntary petition with the Bankruptcy Court, pursuant to Chapter 7 of Title 11 of the United States Code ("The Bankruptcy Code").  (Appellant's Br. 6; Appellees' Br. 5).  On June 6, 2009, Appellees commenced an adversary proceeding against Appellant, by filing a Complaint to Deny Discharge Under Section 727 of the Bankruptcy Code and to Determine Non-Dischargeability of Debtor Under Section 523 of the Bankruptcy Code. (Appellant's Br. 6; Appellees' Br. 6).

After conducting a trial, the Bankruptcy Court found Appellant's obligations to Appellees non-dischargeable.  (Appellant's Br. 6; Appellees' Br. 6).  While the parties submitted further briefing on the issue of damages, Appellees filed a Motion to Reopen Evidentiary Record ("Motion to Reopen"), so as to include the Superior Court's ruling in the State Court Proceeding.  (Appellees' Br. 6).  On February 7, 2011, the Bankruptcy Court ruled from the bench in favor of the Appellees and against Appellant.  (Appellant's Br. 6; Appellees' Br. 7).  Appellees submitted a proposed form of judgment to the Bankruptcy Court on March 8, 2011, which was filed electronically on the Bankruptcy Court's docket and e-mailed to Appellant.  (Appellees' Br. 7).  Appellant filed a letter addressing "the unusual, if not improper form of the Order, without directly objecting to most of its content."[2]  (Appellant's Br. 20-21; Appellees' Br. 14).  On March 16, 2011, the Bankruptcy Court entered an Order of Judgment against Appellant.  (Appellees' Br. 7).  Appellant states that she did

_____

[2] Appellant's concern was that the proposed order attached the order from the State Court Proceeding.  (Appellees' Br. 15).

not receive written notice of this order, and that for this reason, she was late in filing her appeal of the Order of Judgment. (Appellant's Br. 6).

On April 8, 2011, Appellant filed a Motion to Extend the Time for Filing a Notice of Appeal (the "Motion to Extend"), for which the Bankruptcy Court held a hearing. (Appellant's Br. 6; Appellees' Br. 7). During the hearing, the Bankruptcy Court acknowledged that it consistently failed to serve Appellant at her home throughout the entire adversary proceeding, and erroneously served her bankruptcy counsel, who was not representing her at the adversary proceeding. (Appellant's Br. 6; Appellees' Br. 7). Nevertheless, the Bankruptcy Court held that Appellant had failed to demonstrate excusable neglect for missing her deadline to appeal, and on May 11, 2011, entered an Order Denying Motion to Extend Time to File an Appeal (ECF No. 1-1). (Appellant's Br. 6, Appellees' Br. 7, 8). The appeal before this Court followed. (ECF. No. 1).

II.   APPLICABLE LAW

A. Standard of Review

This Court has jurisdiction over final judgments and orders of the Bankruptcy Court pursuant to 28 U.S.C. §158. A district court applies a "clearly erroneous" standard to the bankruptcy judge's findings of fact and reviews the bankruptcy judge's legal conclusions *de novo*. See FED. R. BANKR. P. 8013; In re Cohn, 54 F.3d 1108, 1113 (3d Cir. 1995). A factual finding is clearly erroneous if, in reviewing all the evidence, the reviewing court is left with the "definite and firm conviction that a mistake has been committed," even if there is evidence to support the finding. In re Allegheny Int'l, Inc., 954 F.2d 167, 173 (3d. Cir. 1992); (quoting United States v. United States Gypsum Co., 333 U.S. 364, 395 (1948)). A district court reviews the bankruptcy court's "exercise of discretion for

-3-

abuse thereof." <u>Manus Corp. v. NRG Energy, Inc.</u>, (<u>In re O'Brien Envtl. Energy, Inc.</u>), 188 F.3d 116, 122 (3d. Cir. 1999). "A bankruptcy court abuses its discretion when its ruling is founded on an error of law or a misapplication of law to the facts." <u>Id.</u>

B. Federal Rule of Bankruptcy Procedure 8002

Federal Rule of Bankruptcy Procedure Rule 8002 ("Rule 8002") provides that a "notice of appeal shall be filed with the clerk within [ten] days of the entry of the judgment, order, or decree appealed from." FED.R.BANKR.P. 8002(a). Rule 8002 further provides that the bankruptcy judge may extend the time for filing a notice of appeal, but the request to extend the time "must be made before the time for filing a notice of appeal has expired." FED.R.BANKR.P. 8002(c). If the request to extend the time for filing an appeal is not made within ten days of the entry of the order, but is made within twenty days from the expiration of the time to file a notice of appeal, then the bankruptcy judge may still grant the extension but only "upon a showing of excusable neglect." FED.R.BANKR.P. 8002(c).

III.   <u>DISCUSSION</u>

Appellant contends that her failure to appeal the Order of Judgment in time was "excusable neglect," caused by a "remarkable blend of circumstances" that occurred during her bankruptcy proceedings. (Appellant's Br. 7-8). The circumstances relied on by Appellant include: (1) the Bankruptcy Court Clerk's errors of service throughout the proceedings; (2) opposing Counsel's "deliberate and admitted breach of a long-standing oral courtesy agreement;" (3) "[h]istorical, lengthy delays" in the Bankruptcy Court's issuing of opinions, which set an expectation of slow

-4-

action by the Bankruptcy Court; (4) expectation of an action or reply to Appellant's letter regarding the proposed order; (5) Appellant's unfamiliarity with the concept of "monitoring the docket;" (6) Appellant's pro se status; and (7) the lack of prejudice to Appellees if Appellant is permitted to appeal the Order of Judgment.  (Appellant's Br. 7-8).  Appellant urges this Court not to consider these circumstances individually, but rather, to consider the collective impact of these circumstances. (Appellant's Br. 7-8, 27).  Additionally, Appellant contends that not only has she demonstrated excusable neglect, but also that the Bankruptcy Court's alleged failure to provide notice of the Order of Judgment constituted a "deprivation of her rights and reasonable expectations of civil due process."  (Appellant's Br. 9; Appellees' Br. 17).

A. Excusable Neglect

As Appellant's arguments relate to the Bankruptcy Court's finding that Appellant had not demonstrated "excusable neglect," this Court reviews that decision for abuse of discretion.  See In Re Vertientes, Ltd., 845 F.2d 57, 59 (3d Cir. 1988) (noting that since FED. R. BANKR. P. 9006(b)(1) provides discretion to Bankruptcy Court in determining excusable neglect, appropriate review standard is abuse of discretion).

At the outset, this Court notes that "[l]ack of notice of entry [of an order] does not affect the time to appeal or relieve or authorize the court to relieve a party for failure to appeal within the time allowed . . . ."  In Re Richardson Industrial Contractors, Inc., 190 Fed App'x 128, 130 (3d Cir. 2006) (citing FED. R. BANKR. P. 9022(a)).  For this reason, it has been held that in instances where the court clerk does actually fail to give notice of an order to a party, that failure does not, of itself, constitute excusable neglect entitling the party to an extension of time.  See In re Oprah Barbel, 212 Fed. App'x

87, 89 (3d Cir. 2006) ("Failure to receive notice of an order is no defense."); <u>see also</u> <u>In re Cruey</u>, 158 B.R. 66 (Bankr. W.D. Va. 1993); Lawrence R. Ahern & Nancy Fraas MacLean, Bankruptcy Procedure Manual: Federal Rules Of Bankruptcy Procedure § 8002:9. Were Appellant's arguments based solely on the grounds that the Bankruptcy Court clerk failed to serve her with the order, her appeal would be dismissed expressly under Fed. R. Bankr. P. 9022(a). As Appellant's contention is more robust than merely claiming lack of service by the clerk, however, a broader review of the matter is required.

The reason for the strict application of rule 9022(a) is straightforward: it is the litigant's responsibility to monitor the docket. <u>See</u> <u>In re Cruey</u>, 158 B.R. at 69 ("the basic responsibility to learn of the entry of a judgment or order lies with the party or his attorney. . .") (citing <u>In re Hilliard</u>, 36 B.R. 80, 82 (S.D.N.Y.1984)). Appellant aims her arguments at an underlying assumption of this rationale, that litigants are in fact able to monitor the docket, by claiming that a combination of unique circumstances inhibited her from doing so.

The first circumstance Appellant points to in this regard is the number of Bankruptcy Court Clerk related errors of service throughout the proceedings. (Appellant's Br. 9). Appellant acknowledges that "lack of service of a final order, on its own, does not usually constitute excusable neglect." (Appellant's Br. 9). In response to this, Appellant contends that the Bankruptcy Court failed to serve her on a number of occasions, and that the Bankruptcy Court should therefore be precluded "from enforcing [Rule 9022(a)] when convenient, especially if it harms the litigant." (Appellant's Br. 9).

Related to this argument is the second circumstance that Appellant points to: opposing Counsel's breach of an alleged long-standing oral courtesy agreement. (Appellant's Br. 13).

Appellant claims that this oral courtesy agreement required opposing counsel to consistently serve all notices on Appellant via mail and e-mail. (Appellant's Br. 13). Appellant contends that opposing counsel's violation of this alleged agreement, combined with her reliance on proper service of notice by the Bankruptcy Court, caused her to believe that the Order of Judgment had not yet been filed.

Appellant buttresses this argument with the third and fourth circumstances discussed in her brief. Appellant argues that "lengthy delays" in the Bankruptcy Court's issuing of written orders throughout her case added to her false sense of security, causing her to feel no alarm when the Order of Judgment was not immediately issued. (Appellant's Br. 19-20). Additionally, Appellant contends that she expected either the Court or Appellees to respond to her objection to Appellees' proposed form of order before any such order was issued, and that since neither did respond, she had no reason to think that the Order of Judgment had been issued. (Appellant's Br. 20-21).

Appellant's fifth argument is that not only did she believe her management of the case was sufficient, she was also entirely unaware of any obligation on her part to do more than just monitor her mail and e-mail. Appellant contends that she was wholly ignorant of the concept of "monitoring the docket," and thus could not do so even if she wanted to. (Appellant's Br. 21). Appellant points to a statement by the Bankruptcy Court that "it behooved [Appellant], as a defendant facing a significant liability . . . to monitor the docket." (Appellant's Br. 22). In response, Appellant argues that the phrase "monitor the docket" was not in her "vocabulary or consciousness" at the time, and questions how a lay person could monitor the docket if they are unable to access the electronic systems. (Appellant's Br. 22).

Appellant tries to bolster these arguments with a call for leniency because of her pro se status. (Appellant's Br. 23-25). Appellant's Brief does not directly explain how her pro se status affects this

analysis, but her contention appears to be that her lack of legal experience places knowledge of court proceedings and ability to monitor the docket beyond her reasonable control.  (Appellant's Br. 24-25).

In determining the existence of "excusable neglect," courts examine the factors set forth in Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship., 507 U.S. 380 (1993).  Under Pioneer, "the determination of whether a party's neglect is 'excusable' is essentially an equitable one, in which courts are to take into account all relevant circumstances surrounding a party's failure to file." George Harms Constr. Co., Inc., v. Chao, 371 F.3d 156, 163 (3d Cir. 2004) (citing Chemetron Corp. v. Jones, 72 F.3d 341, 349 (3d Cir. 1995) (citation omitted) (internal quotation marks omitted). These factors include: (1) the danger of prejudice to the non-movant; (2) the length of the delay and potential impact on judicial proceedings; (3) the reason for the delay, including whether it was in the reasonable control of the movant; and (4) whether the movant acted in good faith.  Pioneer, 507 U.S. at 395.  While Pioneer concerned the late filing of a proof of claim, the Third Circuit has applied these factors to interpreting Bankruptcy Rule 8002(c) as well.  See S'holders. v. Sound Radio, Inc., 109 F.3d 873, 879 (3d Cir. 1997); In re Boyce, 2009 WL 1708072 at *5 n.5 (E.D.Pa. June 16, 2009) (Kauffman, J.).

The Third Circuit has maintained that "[a]ll factors must be considered and balanced; no one factor trumps the others."  In re Am. Classic Voyages Co., 405 F.3d 127, 133 (3d Cir., 2005) (citing George Harms Constr. Co., 371 F.3d at 164).  Therefore, while Appellees draw the Court's attention to the Third Circuit's analysis in In re Am. Classic Voyages Co. for the proposition that "at least one case, relied primarily on the 'reason for the delay' factor," this Court must still engage in a thorough balancing of all the factors set forth in Pioneer.

With respect to the first <u>Pioneer</u> factor, the danger of prejudice to the non-movant, Appellees argue that they "have waited more than five years to collect the money that is owed to them . . . . [They] should not have to wait any more time to be justly compensated . . . ." (Appellees' Br 16). In support of this contention, Appellees cite to a Bankruptcy Court case from the Southern District of Texas, holding that a delay of over a decade in collecting money constituted prejudice. <u>Rainey v. Davenport</u>, 342 B.R. 482, 497-98 (Bankr. S.D. Tex. 2006). In response, Appellant's argue that "[t]he principal on the promissory notes was not even due until June and October of 2008, not 'more than 5 years in collecting.'" (Appellant's Reply Br. 12, ECF No. 9). Whether one measures from the date the investments were made or the date the principal on the promissory notes came due, this factor favors Appellant. Appellee has pointed to no cases within this Circuit holding that a five year delay in collecting due money constituted prejudice. The five years cited by Appellee, let alone Appellant's argument of at most a three year delay, fall well short of the decade long delay in <u>Rainey</u>. Further, the arguments by the parties in this case are not directly on point. The only prejudice that would result from permitting the appeal to go forward would be to subject the Appellees to that appeal, and as other courts have held, this is no prejudice at all. <u>See</u>, <u>e.g.</u>, <u>In re Lashinger</u>, 1999 WL 409389 at *2 (Bankr. E.D.Pa. June 15, 1999) ("There is no prejudice to the Debtor other than the burden of being subjected to the appeal, a burden he would be free of only for the fortuity for him of the late filing.") Therefore, the first factor, prejudice to the non-movant, weighs in favor of Appellant.

Appellees' argument regarding the length of the delay factor appears to be tied directly to their argument regarding prejudice: Appellees again refer to having waited more than five years to collect the money owed to them. (Appellees' Br. 16). In response, Appellant blames the behavior

of Appellees for the delay, arguing that "the slight delay occurred simultaneously with Appellees'
. . . run silent, run deep mode . . . ." (Appellant's Reply Br. 12).  Again, neither of these arguments
is directly on point.  This factor is not concerned with the reason for the delay, nor the prejudice
caused by a granting of the extension.  Rather, the focus is simply on the length of the delay.  Here,
the Bankruptcy Court entered the Order of Judgment on March 16, 2011.  On April 8, 2011,
Appellant filed her Motion to Extend.  Significantly, Appellant's Motion was filed within the twenty
day limitations of 8002(c).  This delay is incidental at most, and as such, this factor weighs in
Appellant's favor.

The Court now turns to the most heavily contested factor in this case, which is the "reason
for the delay" factor.  As fully discussed above, Appellant contends that her reliance on opposing
counsel's serving of courtesy copies and her inability to "monitor the docket," both in part caused
by her pro se status, left her in a disadvantaged position when opposing counsel did not serve a copy
of the Order of Judgment on Appellant.  Appellees respond that Appellant's arguments all go to the
same point, that she failed to receive notice of the Order, and that failure to receive notice of the
Order simply does not constitute excusable neglect.  (Appellees' Br. 11-16).

As the Bankruptcy Court noted, courts have uniformly held that litigants, pro se or through
counsel, have a responsibility to monitor the docket.  (Bankr. Mot. Tr. 14, May 9, 2011) (citing In
re Barbel, 212 Fed. App'x 87 (3d Cir. 2006)).  The opinion in In re Investors & Lenders, Ltd. is
particularly instructive in this instance.  That case involved the issue of "whether receipt of an order
after the time to file a notice of appeal has expired causes excusable neglect of such time period
where the movant knew the court's decision before the order was entered."  169 B.R. 546, 547
(Bankr. D.N.J. 1994).  There, defendants claimed excusable neglect for lack of service of an order.

-10-

Id. at 548.  The bankruptcy court noted that Federal Rule of Bankruptcy Procedure 8002(a) permits filing of a notice of appeal prior to the actual issuance of the order appealed from, and that the defendants could have filed a notice of appeal following the issuance of the memorandum opinion, or even after receipt of the proposed order.  Id. at 550-551.  Finding that failure to do so amounted to mere "inadvertence, ignorance of the rules or [a] mistake[] construing the rules," the bankruptcy court held that the defendants had not demonstrated excusable neglect.  Id. at 551 (citing Pioneer, 507 U.S. at 392).  The bankruptcy court went on to note that although the defendants could not control when they would have received a copy of the order at issue, "they had other alternatives for obtaining the status of the order," including checking the docket in the bankruptcy clerk's office or via modem on the court's electronic access system, PACER.  Id.

The facts of this case closely track those of In re Investors & Lenders.  Appellant was present at the February 7, 2011 hearing in which the Bankruptcy Court ruled from the bench that it would enter a judgment in favor of the Appellees and against Appellant.  Appellant was also in receipt of the proposed order prior to entering of the actual order.  Appellant could have filed a notice of appeal after either of those two events, regardless of whether she actually receipt a copy of the order in the mail.  Further, while Appellant did not access PACER until close to the time of the hearing, the Bankruptcy Court noted that she "could have [accessed PACER] all along."  (Bankr. Mot. Tr. 14).

Appellant's argument that her pro se status, in conjunction with the other circumstances of her case, eliminated her ability to monitor the docket is unavailing.  Parties have a responsibility to monitor the docket, whether they are pro se or not.  See, e.g., In re Barbel, 212 Fed. App'x at 89 (where pro se appellant filed a notice of appeal too late, failure to receive notice of an order was no defense).  Appellant's arguments that she relied exclusively on courtesy copies served by Appellees,

that she assumed that an Order would not be immediately forthcoming due to delays by the Bankruptcy Court, and that she assumed that she would first receive an answer to her objections to the proposed order before any order was officially entered, all suffer from the same fundamental flaw: whether Appellant was aware of her responsibility to monitor the docket or not is irrelevant. All parties have a responsibility to do so, regardless of their representation in court.

The final Pioneer factor to be considered is the Appellant's good faith.  On this front, Appellant has repeatedly urged this Court to consider her efforts in checking both her mail and e-mail on a daily basis, and her quick responses to every filing deadline, save one.  (Appellant's Br. 6-7).  In response, Appellees note that while there is no evidence present of Appellant's bad faith, Appellant's failure to monitor the docket inhibits her ability to demonstrate good faith.  (Appellees' Br. 16-17).  This Court has no reason to doubt Appellant's good faith, and therefore this factor weighs in favor of Appellant.  See, e.g., In re Lehamn Bros. Holdings, Inc., 433 B.R. 113, 121 (Bankr. S.D.N.Y. 2010) (where "Debtors . . . have no reason to question the good faith of the Movants," good faith prong weighs in favor of movants).

While the reason for the delay is the only factor weighing against Appellant, this Court still holds that Appellant has not satisfied her burden of demonstrating "excusable neglect." The analysis is not a simple "three against one" question.  Rather, this is an equitable question in which courts are to take into account all relevant circumstances surrounding a party's failure to file.  George Harms Constr. Co., 371 F.3d at 163.  Here, Appellant's reason for delay simply has no merit.  The Court finds this to weigh heavily in favor of Appellees.  The prejudice and good faith factors weigh in favor of Appellant, but really only by default.  Neither party presented particularly compelling arguments on these fronts.  While the length of the delay factor does turn in favor of Appellant's, it

-12-

does not outweigh Appellant's inability to present an acceptable reason for the delay.  The decision of whether or not to grant Appellant's Motion for an Extension of Time to File and Appeal was within the discretion of the Bankruptcy Court.  For the reasons state above, this Court finds that the Bankruptcy Court did not abuse that discretion.


B. Due Process

Appellant has also claimed that the Bankruptcy Court violated her rights and reasonable expectations of civil due process by failing to serve her with the Order of Judgment.  (Appellant's Br. 9).  "An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 314 (1950).  Appellant was on actual notice of the Order of Judgment and her rights to be heard on the matter.  She was present at the hearing in which the Bankruptcy Court ruled from the bench that it would enter judgment against her, and she was in receipt of the proposed form of judgment filed by Appellees.   Therefore, actual knowledge in this case satisfied the requirements of due process.  See In re Willis, 904 F.2d 709 (6th Cir. 1990) (citing Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 314 (1950).

IV.    <u>CONCLUSION</u>

Accordingly, the Bankruptcy Court was correct in its application of law to the facts in this case. Therefore, the final order of the Bankruptcy Court is affirmed.   An appropriate order accompanies this opinion.

 S/ Dennis M. Cavanaugh_____
Dennis M. Cavanaugh, U.S.D.J.

Date:        October 13,  2011
Orig.:       Clerk
cc:          All Counsel of Record
             File